IN THE DISTRICT COURT OF THE UNITED STATES
FOR THE MIDDLE DISTRICT OF ALABAMA
NORTHERN DIVISION

| | | |
|---|---|---|
| GEORGE HOEY MORRIS, | ) | |
| | ) | |
| Petitioner, | ) | |
| | ) | |
| v. | ) | Civil Action No. 2:11cv926-MEF |
| | ) | (WO) |
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Respondent. | ) | |

**RECOMMENDATION OF THE MAGISTRATE JUDGE**

This matter is before the court on a motion by George Hoey Morris ("Morris") to

vacate, set aside, or correct his sentence pursuant to 28 U.S.C. § 2255.

## I.   INTRODUCTION

On October 5, 2006, Morris was found guilty of four counts of criminal sexual activity

with a minor, in violation of 18 U.S.C. §§ 2421, 2422(a), 2423(a), and 2423(b) respectively

(Counts 1-4); visa fraud, in violation of 18 U.S.C. § 1546(a) (Count 5); and firearm

possession by a convicted felon, in violation of 18 U.S.C. § 922(g)(1) (Count 6).[1]  On July

3, 2007, the district court sentenced Morris to 120 months each for Counts 1, 2, and 6 and

180 months each for Counts 3, 4, and 5.  The judgment directed that the terms on all six

counts "shall run consecutively with each other for a total term of imprisonment of 900

---

[1] Morris's trial proceedings were bifurcated, with matters relevant to the § 922(g)(1) firearm-possession count presented to a jury under a redacted indictment setting forth only the § 922(g)(1) charge.  A second jury was empaneled for a trial on the remaining charges (i.e., the sex-offense and visa-fraud counts).  The second jury did not hear evidence related to the firearm-possession charge.

months."

      Morris appealed, raising the following claims in the Eleventh Circuit:

1.      His conviction for firearm possession by a convicted felon should be overturned because his civil rights for the predicate felony conviction had been restored.

2.      His due process rights were violated when the district court failed to conduct a competency hearing.

3.      The district court erred in admitting a book he wrote, "virginbride.net."

4.      The district court erred in its jury instructions regarding Vietnamese marriage law.

5.      The district court's application of extra-verdict sentencing enhancements was error under *Apprendi v. New Jersey*, 530 U.S. 466 (2000), and the sentence imposed was above the statutory maximum.

Doc. No. 28, Ex. MM at 1-7.[2]

      On July 28, 2010, the Eleventh Circuit Court of Appeals issued an opinion affirming

Morris's convictions and sentence.[3]   *United States v. Morris*, 389 Fed. App'x 948 (11th Cir.

---

[2] Document numbers ("Doc. No.") are those assigned by the Clerk in the instant civil action. However, references to the trial transcript ("Tr.") are to Doc. No 281 in Morris's criminal proceeding, Case No. 2:05cr108-LCS. All page references are to those assigned by CM/ECF. References to exhibits ("Ex.") are to exhibits filed by the Government with its response (Doc. No. 28).

[3] Morris's appellate counsel raised a single issue regarding Morris's firearm-possession conviction.  Morris raised the additional arguments about his convictions and sentence in a separate, *pro se* brief.  Morris's appellate counsel included Morris's *pro se* brief in the counseled brief, and the Government responded to all issues raised by Morris and his counsel.  In its discretion, the Eleventh Circuit addressed all issues in both the *pro se* and counseled briefs.

2010).

On October 21, 2011, Morris, proceeding *pro se*, filed a motion under 28 U.S.C.

§ 2255, asserting the following as grounds for relief:

Ground 1:  The prosecutor engaged in criminal misconduct in order to obtain convictions for behavior that was not a violation of the law.

Ground 2:  The prosecutor erred when she told a jury that Morris's behavior in Southeast Asia, which was consummating a marriage on that continent, would have been a crime had it occurred in the maritime jurisdiction of the United States.

Ground 3:  The prosecutor fabricated and manipulated evidence to gain jurisdiction over behavior that did not occur under the jurisdiction of the district court.

Ground 4:  A United States citizen's travel between two foreign countries absent any territorial nexus to the United States cannot constitute travel in foreign commerce.

Ground 5:  The district court's erroneous jury instructions on Vietnamese law prejudiced Morris, resulting in his conviction when he is actually innocent of the sex offenses charged in the indictment.

Ground 6:  Morris was wrongly indicted for an immaterial written error on a visa application that was never presented or procured.

Ground 7:  The district court's denial of Morris's motion for change of venue violated Rule 21(a) of the Federal Rules of Criminal Procedure, denied Morris a fair trial, and undermined the reliability of the verdict.

Ground 8:  The district court violated Morris's procedural and substantive due process rights by failing to act *sua sponte* on information before the court to determine whether Morris was competent to stand trial and for failing to consider whether Morris had been tried and convicted while medicated to the point of incompetency.

Ground 9:  The evidence used during trial was not listed on the search warrant.

3

<u>Ground 10</u>:  Morris's right to fight his case under bond was violated by unlawful pretrial detention, which was accomplished through perjury, and this unlawful detention limited his access to information and resources.

<u>Ground 11</u>:  The district court lacked subject matter jurisdiction to prosecute Morris under 18 U.S.C. § 922(g)(1) because 18 U.S.C. § 921(a)(20) precludes the use of Morris's prior conviction as a predicate felony because the State of Colorado had restored his civil rights.

<u>Ground 12</u>:  The district court violated the rule of *Apprendi* when, at sentencing, it made factual determinations lacking reliability and when the sentence imposed lacked "procedural safeguards" that would have prevented a "tail wagging the dog" type of sentence that was imposed in violation of Morris's Fifth and Sixth Amendment rights.

<u>Ground 13</u>:  Morris's ability to fight his sentence and to appeal his convictions was compromised by prosecutorial misconduct.

<u>Ground 14</u>: Morris's counsel rendered ineffective assistance by–

    (a)    failing to recognize that false claims about Vietnamese law were submitted by the prosecution;

    (b)    failing to recognize that Morris was ineligible for prosecution under 18 U.S.C. § 922(g)(1);

    (c)    failing to recognize that no visa-fraud offense occurred;

    (d)    failing to recognize that Morris was medicated during trial to the point of incompetency;

    (e)    failing to object to the district court's admission of evidence seized pursuant to warrant searches of his property; and

    (f)    failing to present additional issues on appeal.

<u>Ground 15</u>:  No crime actually occurred, because none of the indicted conduct

4

describes behavior that is criminal, and the charges resulted from perjured, false, or misleading evidence.

Ground 16:  Marital privilege prohibited the use of testimony from Morris's former spouse to establish the elements of the indictment.

Ground 17:  The case against Morris "represented a violation of the United States Constitution that has evolved into an unprecedented and historic example of criminal abuse and misuse of power, and those responsible must be prosecuted in order to uphold the integrity of the judiciary."

Doc. No. 1 at 5-14; Doc. No. 2 at 15-113.[4]

On February 21, 2012, Morris filed an amendment to his § 2255 motion asserting

seven additional claims:

Ground 18:  The search warrant seeking child pornography was issued based on insufficient and false information and was therefore illegal.

Ground 19:  The indictments denied Morris's constitutional right to FBI protection from terrorist activities due to sabotage of his FBI complaint by federal agents with personal motives.

Ground 20:  The district court erroneously admitted a book entitled "virginbride.net" that was cumulative of other evidence presented, and the prosecutor's statement that the book was child pornography was unduly prejudicial.

Ground 21:  Morris's former spouse was not present at the trial to be examined regarding false information presented to the jury that was not provided to defense in discovery.

Ground 22:  The district court's use of the word "child" when explaining Vietnamese law to the jury was inappropriate and prejudicial.

---

[4] Doc. No 2 is Morris's memorandum in support of his § 2255 motion. The claims in Morris's motion and supporting submissions overlap in places, are frequently repetitive, and are not always presented clearly. The court has chosen to set forth Morris's claims, as much as possible, in the manner he has presented them.

Ground 23: "Compensated witnesses from Washington, D.C." did not provide relevant testimony as to fraud charges but rather added credibility to the charges and confused the jury.

Ground 24: Morris was not previously convicted of a crime "punishable by more than one year in prison" as required for indictment under 18 U.S.C. § 922(g)(1).

Doc. No. 25 at 90-106.

In its response (Doc. No. 28), the Government argues that Grounds 1-13 and 15-17 in Morris's § 2255 motion as well as Grounds 18-24 in his amendment – in other words, all of Morris's substantive, non-ineffective assistance of counsel claims – are procedurally barred from collateral review, either because they were raised in some form and addressed on direct appeal or because they could have been raised on direct appeal but were not.  Doc. No. 28 at 37-40. The Government further argues that Grounds 18-21 and 23 in the amendment are also time-barred, because they were first asserted more than one year after Morris's conviction became final and they do not relate back to any claim presented in the timely filed § 2255 motion.  *Id*. at 34-37.  Finally, the Government argues that Morris's claims of ineffective assistance of counsel – as set forth in Ground 14 of his § 2255 motion – fail to establish deficient performance and prejudice, as required by *Strickland v. Washington*, 466 U.S. 668 (1984), and thus do not entitle Morris to any relief.  *Id*. at 44-65. Morris replied to the Government's response.  Doc. No. 34.

After due consideration of Morris's § 2255 motion as amended, the submissions supporting and opposing the motion, and the record in this case, the court concludes that an

6

evidentiary hearing is not required and that, pursuant to Rule 8(a), *Rules Governing Section 2255 Proceedings in the United States District Courts*, the § 2255 motion should be denied.

## II.   DISCUSSION

### A.   The Charges Against Morris

Because an understanding of the charges against Morris is useful in assessing his present claims, this court quotes the portion of his indictment setting forth facts relevant to those charges:

> 1.  At all times relevant to the Indictment, the defendant, George Hoey Morris, aka Johnny Ray Fortune, was a citizen and resident of the United States of America and citizen and resident of the Middle District of Alabama.
>
> 2.  That on or about April 24, 1980, Morris was convicted of Sale of Narcotic Drugs, a felony, in Adams County, Colorado.
>
> 3.  That in 1991, in Lee County, Alabama, Morris married ZMG.  The parties divorced in Lee County, Alabama, in 1992.
>
> 4.  That between 1982 and 1997, Morris made approximately 13 trips to foreign countries, including Vietnam.
>
> 5.   That in 1995 Morris married TNTN, a Vietnamese female, in Vietnam.
>
> 6.   That in June 1996, Morris filed a petition for a fiancée visa for TNTN, a Vietnamese female, born August 2, 1979.  Morris later asked to withdraw the petition.
>
> 7.   That Morris was deported from Vietnam after being convicted of sleeping with prostitutes on more than one occasion and taking nude photographs.
>
> 8.  That on July 8, 1997, Morris legally changed his name to Johnny Ray Fortune in an effort to change his identity to enable him to return to

Vietnam.

9. That Fortune then applied for and received a United States passport.

10. That in January 1999, Fortune returned to Vietnam to find a "virgin bride," which is a code term for a female between the age of 12-18.

11. That on April 15, 1999, Fortune married TP, born December 5, 1983, who was then 15 years old, after paying money to her parents and agreeing to continue paying monies to her parents.

12. That on April 16, 1999, Fortune traveled by airplane to Bangkok, Thailand with TP, where he had sexual intercourse with her on numerous occasions.

13. That Fortune took TP to Phuket, Thailand in April 1999, where he again engaged in repeated sexual activity with her.

14. That in May, 1999, Fortune took TP to Phuquoc, Vietnam, where he again engaged in repeated sexual activity with her.

15. That in June of 1999, Fortune returned to the United States, leaving TP in Vietnam.

16. That in November 1999, Fortune filed a second petition for a fiancée visa for CTTT, born August 12, 1987, in Vietnam. The application was denied because CTTT was 12 years old at the time.

17. In July, 2001, Fortune filed a third petition for a fiancée visa for HTMP, born April 1983, in Vietnam, who was then 18 years of age.

18. In 2001 Fortune, under the name Hoey Morris, published "Virgin Bride.Net," a book which he intended to be used as "a guidebook. The author explains where the virgins are, how to find them and how to bring them home."

19. In 2004, during an interview of Morris/Fortune, at the Morris residence in Elmore County, Alabama, agents determined that Morris was in possession of a firearm.

20.  That Morris/Fortune was a user of marijuana from on or about 1999 through 2005.

Ex. D at 1-3.

Counts 1-6 of the indictment, all of which incorporated paragraphs 1-20 above by

reference, specifically charged Morris as follows:

### COUNT 1

[B]etween April and June, 1999, ... the defendant ... did knowingly transport an individual in foreign commerce with intent that such individual engage in any sexual activity for which any person can be charged with a criminal offense, in violation of Title 18, United States Code, Section 2421.

### COUNT 2

[B]etween January and June, 1999, ... the defendant ... did knowingly persuade, induce, entice, and coerce an individual to travel in foreign commerce to engage in any sexual activity for which any person can be charged with a criminal offense, in violation of Title 18, United States Code, Section 2422(a).

### COUNT 3

[B]etween April and June, 1999, ... the defendant ... did knowingly transport an individual who had not attained the age of 18 years in foreign commerce, with intent to engage in any sexual activity for which any person can be charged with a criminal offense, and attempted to do so, in violation of Title 18, United States Code, Section 2423(a).

### COUNT 4

[B]etween January and June, 1999, ... the defendant ..., a United States citizen, did travel in foreign commerce and conspire to do so, for the purpose of engaging in any sexual act (as defined in section 2246) with a person under the age of 18 years of age that would be in violation of Chapter 109A if the sexual act occurred in the special maritime and territorial jurisdiction of the United States, in violation of Title 18, United States Code, Section 2423(b).

<u>COUNT 5</u>

On or about July 5, 2001, ... the defendant ... did knowingly made under oath and as permitted under penalty of perjury, under Section 1746 of Title 28, United States Code, and knowingly subscribe as true, a false statement with respect to a material fact in an application required by the immigration laws and regulations prescribed thereunder, and knowingly presented said application which contained such false statement, in violation of Title 18, United States Code, Section 1546(a).

<u>COUNT 6</u>

On or about December 20, 2004, ... the defendant ..., having been previously convicted in a court, of a crime punishable by imprisonment for a term in excess of one year, to-wit:  Sale of Narcotic Drug in Adams County, Colorado, did knowingly possess a firearm in and affecting commerce, that is, a Ruger, model 10/22, .22 caliber Carbine ..., in violation of Title 18, United States Code, Section 922(g)(1).

Ex. D at 3-6

**B.   General Standard of Review**

Because collateral review is not a substitute for direct appeal, the grounds for collateral attack on final judgments pursuant to 28 U.S.C. § 2255 are extremely limited.  A prisoner is entitled to relief under § 2255 if the court imposed a sentence that (1) violated the Constitution or laws of the United States, (2) exceeded its jurisdiction, (3) exceeded the maximum authorized by law, or (4) is otherwise subject to collateral attack.  *See* 28 U.S.C. § 2255; *United States v. Phillips*, 225 F.3d 1198, 1199 (11th Cir. 2000); *United States v. Walker*, 198 F.3d 811, 813 n.5 (11th Cir. 1999).  "Relief under 28 U.S.C. § 2255 'is reserved for transgressions of constitutional rights and for that narrow compass of other injury that

could not have been raised in direct appeal and would, if condoned, result in a complete miscarriage of justice.'"  *Lynn v. United States*, 365 F.3d 1225, 1232 (11th Cir. 2004) (citations omitted).

## C.   Substantive Claims

### 1.   *Substantive Claims Raised and Resolved on Direct Appeal: Grounds 5, 8, 11, 12, 20, and 22*

The court finds that the following claims in Morris's § 2255 motion as amended were raised in substantially the same form in Morris's direct appeal, where they were decided adversely to him by the appellate court:

Ground 5:  The district court's erroneous jury instructions on Vietnamese law prejudiced his conviction when he is actually innocent of the sex offenses charged in the indictment.  Doc. No. 1 at 8; Doc. No. 2 at 35-42; *see United States v. Morris*, 389 Fed. App'x 948, 952 (11th Cir. 2010).

Ground 8:  The district court violated his procedural and substantive due process rights by failing to act *sua sponte* on information before the court to determine whether he was competent to stand trial, and for failing to consider whether he had been tried and convicted while medicated to incompetency.  Doc. No. 1 at 10; Doc. No. 2 at 53-70; *see Morris*, 389 Fed. App'x at 951.

Ground 11:  The district court lacked subject matter jurisdiction to prosecute him under 18 U.S.C. § 922(g)(1) because 18 U.S.C. § 921(a)(20) precludes the use of his prior conviction as a predicate felony because the State of Colorado had restored his civil rights.  Doc. No. 1 at 11; Doc. No. 2 at 76-80; *see Morris*, 389 Fed. App'x at 950-51.

Ground 12:  The district court violated the rule of *Apprendi* when, at sentencing, it made factual determinations lacking reliability and when the sentence imposed lacked "procedural safeguards" that would have prevented a "tail wagging the dog" type of sentence that was imposed in violation of his Fifth and Sixth Amendment rights.  Doc. No. 1 at 12; Doc. No. 2 at 80-92; *see Morris*, 389 Fed. App'x at 952.

Ground 20: The district court erroneously admitted a book entitled "virginbride.net" that was cumulative of other evidence presented, and the prosecutor's statement that the book was child pornography was unduly prejudicial.  Doc. No. 25 at 94-97; *see Morris*, 389 Fed. App'x at 951-52.

Ground 22:  The district court's use of the word "child" when explaining Vietnamese law to the jury was inappropriate and prejudicial.  *See* Doc. No. 25 at 99-102; *see Morris*, 389 Fed. App'x at 952.

"The district court is not required to reconsider claims of error that were raised and disposed of on direct appeal." *United States v. Nyhuis*, 211 F.3d 1340, 1343 (11th Cir. 2000); *see also United States v. Rowan*, 663 F.2d 1034, 1035 (11th Cir. 1981).  If a claim has previously been raised on direct appeal and decided adversely to a defendant, it cannot be relitigated in a collateral attack under § 2255.  *See Nyhuis*, 211 F.3d at 1343.  Furthermore, "[a] rejected claim does not merit rehearing on a different, but previously available, legal theory." *Id*.

The Eleventh Circuit decided the issues presented in Grounds 5, 8, 11, 12, 20, and 22 adversely to Morris.  Because these claims were raised and resolved in Morris's direct appeal, this court will not reconsider the claims here.  *Nyhuis*, 211 F.3d at 1343.

### 2.     *Substantive Claims Not Raised on Direct Appeal:  Grounds 1-4, 6, 7, 9, 10, 13, 15-19, 21, 23, and 24*

#### a.     Defaulted Claims

The court finds that Morris's § 2255 motion as amended includes the following substantive claims that were not raised on direct appeal:

Ground 1:  The prosecutor engaged in criminal misconduct in order to obtain convictions for behavior that was not a violation of the law.  *See* Doc. No. 1

12

at 5; Doc. No. 2 at 15-18.

Ground 2:  The prosecutor erred when she told a jury that Morris's behavior in Southeast Asia, which was consummating a marriage on that continent, would have been a crime had it occurred in the maritime jurisdiction of the United States.  *See* Doc. No. 1 at 6; Doc. No. 2 at 18-19.

Ground 3:  The prosecutor fabricated and manipulated evidence to gain jurisdiction over behavior that did not occur under the jurisdiction of the district court.  *See* Doc. No. 1 at 7; Doc. No. 2 at 19-28.

Ground 4:  A United States citizen's travel between two foreign countries absent any territorial nexus to the United States cannot constitute travel in foreign commerce.  *See* Doc. No. 1 at 7; Doc. No. 2 at 29-34.

Ground 6:  Morris was wrongly indicted for an immaterial written error on a visa application which was never presented or procured.  *See* Doc. No. 1 at 8-9; Doc. No. 2 at 42-46.

Ground 7:  The district court's denial of Morris's motion for change of venue violated Rule 21(a) of the Federal Rules of Criminal Procedure, denied Morris a fair trial, and undermined the reliability of the verdict.  *See* Doc. No. 1 at 9; Doc. No. 2 at 46-53.

Ground 9:  The evidence used during trial was not listed on the search warrant. *See* Doc. No. 1 at 10; Doc. No. 2 at 70-74.

Ground 10:  Morris's right to fight his case under bond was violated by unlawful pretrial detention, which was accomplished through perjury, and this unlawful detention limited his access to information and resources.  *See* Doc. No. 1 at 11; Doc. No. 2 at 74-75.

Ground 13:  Morris's ability to fight his sentence and to appeal his convictions was compromised by prosecutorial misconduct.  *See* Doc. No. 1 at 12; Doc. No. 2 at 92-97.

Ground 15:  No crime actually occurred because none of the indicted conduct describes behavior that is criminal, and the charges resulted from perjured, false, or misleading evidence.  *See* Doc. No. 1 at 14; Doc. No. 2 at 103-08.

Ground 16:  Marital privilege prohibited the use of testimony from Morris's former spouse to establish the elements of the indictment.  *See* Doc. No. 1 at 14; Doc. No. 2 at 108-10.

Ground 17:  The case against Morris "represented a violation of the United States Constitution that has evolved into an unprecedented and historic example of criminal abuse and misuse of power, and those responsible must be prosecuted in order to uphold the integrity of the judiciary."  *See* Doc. No. 1 at 14; Doc. No. 2 at 110-13.

Ground 18:  The search warrant seeking child pornography was issued based on insufficient and false information and was therefore illegal.  *See* Doc. No. 25 at 90-92.

Ground 19:  The indictments denied Morris's constitutional right to FBI protection from terrorist activities due to sabotage of his FBI complaint by federal agents with personal motive.  *See* Doc. No. 25 at 92-94.

Ground 21:  Morris's former spouse was not present at the trial to be examined regarding false information presented to the jury that was not provided to defense in discovery.  *See* Doc. No. 25 at 97-99.

Ground 23: "Compensated witnesses from Washington, D.C." did not provide relevant testimony as to fraud charges but rather added credibility to the charges and confused the jury.  *See* Doc. No. 25 at 102-05.

Ground 24:  Morris was not previously convicted of a crime "punishable by more than one year in prison" as required for indictment under 18 U.S.C. § 922(g)(1).  *See* Doc. No. 25 at 105-06.

Ordinarily, if an available claim is not advanced on direct appeal, it is procedurally barred in a § 2255 proceeding.  *See Mills v. United States*, 36 F.3d 1052, 1055-56 (11th Cir. 1994); *Greene v. United States*, 880 F.2d 1299, 1305 (11th Cir. 1989).  "A defendant can avoid a procedural bar only by establishing one of the two exceptions to the procedural default rule.  Under the first exception, a defendant must show cause for not raising the claim

14

of error on direct appeal and actual prejudice from the alleged error." *Lynn v. United States*, 365 F.3d 1225, 1234 (11ᵗʰ Cir. 2004) (citing *Bousley v. United States*, 523 U.S. 614, 622 (1998)). "Under the second exception, a court may allow a defendant to proceed with a § 2255 motion despite his failure to show cause for procedural default if 'a constitutional violation has probably resulted in the conviction of one who is actually innocent.'" *Lynn*, 365 F.3d at 1234–35 (quoting *Mills*, 36 F.3d at 1055).

Morris does not attempt to demonstrate "cause" for his failure to raise the above-noted claims on direct appeal.[5]  However, he argues that these otherwise procedurally defaulted claims should be reviewed in this proceeding because, he says, he is "actually innocent" of all offenses of which he was convicted.  *See* Doc. No 34 at 5-37.  He maintains that his actual innocence is a gateway through which he may obtain collateral review of his otherwise defaulted claims.  *Id*. at 5-7.

---

[5] Morris does suggest that the failure of his trial and appellate counsel to challenge the district court's jury instructions regarding Vietnamese marriage law constitutes ineffective assistance and thus is "cause" excusing the procedural default of his substantive claim that the court's jury instructions were erroneous (i.e., Ground 5).  *See* Doc. No. 34 at 38-39.  Morris presents an independent claim of ineffective assistance of counsel premised on assertions that the prosecution misrepresented Vietnamese marriage laws and the district court, in turn, erred in its jury instructions regarding Vietnamese marriage law.  *See* Part II.E.2.a of this Recommendation.  The court finds that Morris's claims in this regard lack merit.  *Id*.  Thus, to the extent that Ground 5 in Morris's § 2255 motion presents matters not addressed by the Eleventh Circuit on direct appeal, Morris fails to establish cause for his procedural default of this claim.

Two other procedurally defaulted substantive claims presented by Morris – that he was wrongly indicted for an immaterial written error on a visa application that was never presented or procured (Ground 6) and that the evidence used during trial was not listed on the search warrant (Ground 9) – underlie independent allegations of ineffective assistance of counsel presented by Morris.  Those claims are discussed below in this Recommendation and are found to lack merit.  *See* Part II.E.2.c & e.

15

b.    "Actual Innocence"

In *Schlup v. Delo*, 513 U.S. 298 (1995), the United States Supreme Court held that prisoners asserting actual innocence as a gateway to review of defaulted claims must establish that, in light of new evidence, "it is more likely than not that no reasonable juror would have found [the] petitioner guilty beyond a reasonable doubt." 513 U.S. at 327. "[T]he *Schlup* standard is demanding and permits review only in the 'extraordinary' case." *House v. Bell*, 547 U.S. 518, 538 (2006). A petitioner must show "factual innocence, not mere legal insufficiency." *Bousley v. United States*, 523 U.S. 614, 623-24 (1998).

As the Supreme Court in *Schlup* observed:

> [A] substantial claim that constitutional error has caused the conviction of an innocent person is extremely rare.... To be credible, such a claim requires petitioner to support his allegations of constitutional error with new reliable evidence – whether it be exculpatory scientific evidence, trustworthy eyewitness accounts, or critical physical evidence – that was not presented at trial. Because such evidence is obviously unavailable in the vast majority of cases, claims of actual innocence are rarely successful.

513 U.S. at 324.

As noted above, Morris maintains that he is actually innocent of all offenses of which he was convicted. With regard to his convictions for criminal sexual activity with a minor (Counts 1-4 of the indictment),[6] Morris presents an extended argument, under the rubric of "prosecutorial misconduct," in which he asserts that his indictment was obtained, and his prosecution pursued, through numerous intentional misrepresentations by the prosecutor and

---

[6] *See* 18 U.S.C. §§ 2421, 2422(a), 2423(a), and 2423(b).

16

federal agents.  Without providing proof, he accuses the Government and witnesses against him of perjury, conspiracy to commit perjury, solicitation of perjury, and witness intimidation.  *See, e.g.*, Doc. No. 34 at 6; Doc. No. 1 at 5; Doc. No. 2 at 15-18.  According to Morris, the Government fabricated, then pursued, the charges against him in an effort to "save face" after an earlier investigation of Morris for child pornography failed to produce evidence against him.  *Id*.  Morris's allegations are based on rank speculation and do not constitute new reliable evidence to support his claim of actual innocence.

Other than his unsubstantiated allegations of prosecutorial misconduct, Morris's assertions of actual innocence as to his convictions for criminal sexual activity with a minor are based on arguments relating to supposed deficiencies in the indictment, alleged errors in the district court's jury instructions, and the purported insufficiency of evidence to sustain his convictions.  *See* Doc. No. 34 at 6-18, 37-47.  These matters, however, do not constitute evidence of factual innocence.[7]  *See, e.g., Justo v. Culliver*, 317 Fed. App'x 878, 880-81 (11th Cir. 2008) (rejecting claim of actual innocence based on alleged deficiency in indictment); *Brown v. Dretke*, 2003 WL 22251389, at *1-2 (N.D. Tex. Sep. 30, 2003) (holding

---

[7] Some of Morris's arguments in this regard are related to claims he presents elsewhere in his § 2255 motion that the prosecution misrepresented Vietnamese marriage law and that the district court, in turn, incorrectly instructed the jury regarding that law.  These claims are addressed in this court's discussion, *infra*, of Morris's claim that his trial counsel was ineffective for failing to argue that the prosecution made "false claims" about Vietnamese law.  *See* Part II.E.2.a of this Recommendation.  In rejecting Morris's claim that his trial counsel rendered ineffective assistance, this court finds no merit to his arguments that the prosecution made false claims about Vietnamese law or that the district court erred instructing the jury regarding Vietnamese law.  *Id*.  In any event, as noted, such claims are not evidence of factual innocence.

petitioner's burden of establishing actual innocence to excuse procedural default had not been met despite allegations of a fatal variance between the indictment and the evidence); *Jones v. Hanks*, 1997 WL 355515, at *2 (7th Cir. Jun. 24, 1997) (petitioner's assertion he was innocent because his conviction was based on erroneous jury instructions merely raised a claim of legal innocence); *Fleming v. Olson*, 1998 WL 34093762, at *5 (S.D. W.Va. Oct. 14, 1998) ("[E]ven if the [jury] instruction was erroneous, it resulted in legal error and is therefore irrelevant to our review on a claim of actual innocence."); *Rutledge v. Neilsen*, 2012 WL 3778987, at *7 (M.D. Ala. Jul. 30, 2012) (allegations of prosecution's failure to prove essential elements of offense go to sufficiency of and/or weight afforded the evidence presented and do not constitute "new reliable evidence" going to petitioner's actual innocence).

Likewise, Morris's assertions of actual innocence as to his visa-fraud and firearm-possession convictions are also based on arguments going to the sufficiency of the evidence and purported errors in the district court's jury instructions. *See* Doc. No. 34 at 18-37. Such arguments do not go to Morris's factual innocence, do not constitute "new reliable evidence," and do not satisfy the *Schlup* standard for actual innocence.[8]  *See* 513 U.S. at 324-28.

_____

[8] Morris's arguments here are related to his claims, elsewhere, that his conduct did not satisfy the elements of the visa-fraud statute, 18 U.S.C. § 1546(a), and that he was "ineligible" for prosecution under the firearm-possession statute, 18 U.S.C. § 922(g)(1). These arguments are addressed in the court's discussion, *infra*, of Morris's claims that his trial counsel rendered ineffective assistance for failing to raise these substantive issues. *See* Parts II.E.2.b-c of this Recommendation.  In rejecting Morris's claim that his trial counsel rendered ineffective assistance in this regard, ths court finds no merit in Morris's underlying substantive claims.  *Id.*

Consequently, none of Morris's assertions of actual innocence provide a gateway for review of his procedurally barred claims.

**D.     Time-barred Claims in Amendment to § 2255 Motion**

In addition to being procedurally defaulted, Grounds 18-21 and 23 in Morris's amendment to his § 2255 motion are time-barred, because these claims were first asserted more than one year after Morris's conviction became final and they do not relate back to any claim presented in the timely filed § 2255 motion.

The Federal Rules of Civil Procedure provide for the relation back of amendments filed after the running of a period of limitation in certain circumstances.  Rule 15(c) of the Federal Rules of Civil Procedure provides that "[a]n amendment of a pleading relates back to the date of the original pleading when ... the claim or defense asserted in the amended pleading arose out of the conduct, transaction, or occurrence set forth or attempted to be set forth in the original pleading."  *See* Fed.R.Civ.P. 15(c)(2). "'Relation back' causes an otherwise untimely claim to be considered timely by treating it as if it had been filed when the timely claims were filed."  *Davenport v. United States*, 217 F.3d 1341, 1344 (11th Cir. 2000).

Because Morris did not seek certiorari review by the Supreme Court, his conviction became final 90 days after the Eleventh Circuit issued its July 28, 2010, opinion affirming his convictions and sentence.  *See Close v. United States*, 336 F.3d 1283, 1284-85 (11th Cir. 2003); *Kaufman v. United States*, 282 F.3d 1336, 1337-39 (11th Cir. 2002); Sup.Ct. R. 13(1)

& (3).  Thus, his conviction became final on October 26, 2010.  Under 28 U.S.C. § 2255(f), Morris had until October 26, 2011, to file a § 2255 motion that was timely under § 2255's one-year period of limitation. *See* 28 U.S.C. § 2255(f)(1).  Morris filed his § 2255 motion on October 21, 2011.  Therefore, the claims in his original § 2255 motion were timely raised. However, he filed his amended motion, containing his new claims, on February 21, 2012 – nearly four months after § 2255(f)'s one-year deadline had expired.

New claims asserted in an amended motion do not relate back to timely asserted claims where they arise from conduct and occurrences separate from the conduct and occurrences forming the basis of the timely asserted claims. *See Davenport*, 217 F.3d at 1346.  "Congress did not intend Rule 15(c) to be so broad as to allow an amended pleading to add an entirely new claim based on a different set of facts."  *Pruitt v. United States*, 274 F.3d 1315, 1317 (11th Cir. 2001).  Grounds 18-21 and 23 in Morris's February 21, 2012, amendment arise from conduct and occurrences separate from the conduct and occurrences forming the basis of the claims contained in his original § 2255 motion and bear no legal or factual relationship to those earlier claims. Thus, these new claims do not "relate back" under Rule 15(c) and are barred from review because they are untimely under § 2255's one-year limitation period.[9]  *See Farris v. United States*, 333 F.3d 1211, 1215-16 (11th Cir. 2003); *Pruitt*, 274 F.3d at 1319.

---

[9] As noted earlier, these claims are also procedurally barred because they were not asserted on appeal and Morris fails to establish his actual innocence as a gateway to collateral review of the claims.

### E.     Ineffective Assistance of Counsel

#### 1.     *Strickland Standard*

A claim of ineffective assistance of counsel must be evaluated against the two-part test announced in *Strickland v. Washington*, 466 U.S. 668 (1984).  First, a petitioner must show that "counsel's representation fell below an objective standard of reasonableness." *Id*. at 689.  Second, the petitioner must show that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Id*. at 694.  *See Chandler v. United States*, 218 F.3d 1305, 1313 (11th Cir. 2000).

Scrutiny of counsel's performance is "highly deferential," and the court indulges a "strong presumption" that counsel's performance was reasonable.  *Chandler*, 218 F.3d at 1314 (internal quotation marks omitted).  The court will "avoid second-guessing counsel's performance:  It does not follow that any counsel who takes an approach [the court] would not have chosen is guilty of rendering ineffective assistance." *Id*. (internal quotation marks and brackets omitted).  Thus, "[g]iven the strong presumption in favor of competence, the petitioner's burden of persuasion – though the presumption is not insurmountable – is a heavy one." *Id*.

As noted, under the prejudice component of *Strickland*, a petitioner must show that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different" *Strickland*, 466 U.S. at 694.  A "reasonable probability is a probability sufficient to undermine confidence in the outcome." *Id*.  The

prejudice prong does not focus only on the outcome; rather, to establish prejudice, the petitioner must show that counsel's deficient representation rendered the result of the trial fundamentally unfair or unreliable.  *See Lockhart v. Fretwell*, 506 U.S. 364, 369 (1993) ("[A]n analysis focusing solely on mere outcome determination, without attention to whether the result of the proceeding was fundamentally unfair or unreliable, is defective."). "Unreliability or unfairness does not result if the ineffectiveness of counsel does not deprive the defendant of any substantive or procedural right to which the law entitles him."  *Id*. at 372.

Unless a petitioner satisfies the showings required on both prongs of the *Strickland* inquiry, relief should be denied.  *Strickland*, 466 U.S. at 687.  Accordingly, once a court decides that one of the requisite showings has not been made, it need not decide whether the other one has been.  *Id*. at 697; *Duren v. Hopper*, 161 F.3d 655, 660 (11th Cir. 1998).

A criminal defendant's right to effective assistance of counsel continues through direct appeal.  *See Evitts v. Lucey*, 469 U.S. 387, 396 (1985).  Ineffective assistance of appellate counsel may be shown if the movant can "establish ... that counsel omitted significant and obvious issues while pursuing issues that were clearly and significantly weaker....  Generally, only when ignored issues are clearly stronger than those presented, will the presumption of effective assistance of counsel be overcome."  *Mayo v. Henderson*, 13 F.3d 528, 533 (2d Cir. 1994).

The Supreme Court has held a criminal defendant's appellate counsel is not required

to raise all nonfrivolous issues on appeal. *Jones v. Barnes*, 463 U.S. 745, 751-54 (1983).

In so holding, the Court noted, "[e]xperienced advocates since time beyond memory have

emphasized the importance of winnowing out weaker arguments on appeal and focusing on

one central issue if possible, or at most on a few key issues." *Id*. at 751-52.  Therefore, it is

difficult for a defendant to show his counsel was ineffective for failing to raise certain issues

on appeal, particularly if counsel did present other strong issues. *Smith v. Robbins*, 528 U.S.

259, 287-88 (2000).

### 2.  *Morris's Claims of Ineffective Assistance*

#### a.  Failure to Recognize "False Claims" about Vietnamese Law

Morris contends that his trial counsel rendered ineffective assistance by "fail[ing] to

recognize that the prosecution made false claims about Vietnamese law."  Doc. No. 1 at 13;

Doc. No. 2 at 94.

Under this heading in his § 2255 motion (and his supporting memorandum), Morris

fails to point to a specific false claim about Vietnamese law allegedly made by the

prosecution. It is possible, although not certain, that Morris may be referring to his

allegations elsewhere that the prosecution falsely claimed – and the district court incorrectly

instructed the jury on the 18 U.S.C. § 2421 charge (transportation of a minor for criminal

sexual activity) – that under Vietnamese marriage law as it existed in 1999 (when Morris

allegedly married the underage victim), a female under the age of 18 could not legally marry.

*See* Ground 5, Doc. No. 2 at 35-42. This claim was raised on appeal in Morris's *pro se* brief.

The Eleventh Circuit held that Morris's challenge was unavailing based on the doctrine of invited error, because Morris did not object to the instruction during a charge conference when the district court asked for any objections by the defense. *United States v. Morris*, 389 Fed. App'x 948, 952 (11th Cir. 2010).

Evidence presented at trial indicated that in January 1999, Morris, under the name "Johnny Ray Fortune," traveled to Vietnam with the intent to marry a "virgin bride," a young female between the ages of 12-18. Tr. at 267, 314-15.  Morris initially arranged to "marry" a specific 16-year-old Vietnamese girl, but then decided he preferred her 15-year-old sister, "TP"  Tr. at 267.  A ceremony to celebrate Morris's "marriage" to TP was held on a boat on the Saigon River.[10]  Tr. at 282-83.  Morris paid $1200 to TP's parents before he and TP boarded an airplane to Thailand for their "honeymoon." Tr. at 268, 283-84, 310.  In Thailand, Morris engaged in sexual intercourse with TP for several weeks before returning with her to Vietnam.  *Id*.  After their return, TP lived at her parents' home.  Tr. at 283-84.  Some time later, Morris took TP to the island of Phuquoc, where he again engaged in sexual intercourse with her before again returning her to her parents' home.  Tr. at 330-37.  Morris returned to the United States alone.  Tr. at 264-67, 283-85, 311-14.

Kimberly Yen, a special agent with U.S. Immigration and Customs Enforcement working in Vietnam,[11] testified that, in 1999, a female under the age of 18 could not legally

---

[10] A videotape of that ceremony was played at trial.

[11] Agent Yen testified that her duties with Immigration and Customs Enforcement included
(continued...)

24

marry under Vietnamese law and that Vietnamese law prohibited sexual intercourse with a

child under the age of 16.  Tr. at 178-79.

When instructing the jury as to the § 2421 charge, the district court stated, in pertinent

part:

> Count One charges the defendant with a violation of Title 18 United States
> Code Section 2421, which makes it a federal crime or offense for anyone to
> knowingly transport any individual in foreign commerce with intent that such
> individual engage in any sexual activity for which any person can be charged
> with a criminal offense.  The defendant can be found guilty of that offense
> only if all of the following facts are proved beyond a reasonable doubt.  First,
> that the defendant transported an individual in foreign commerce. Second, that
> the defendant, in so doing, intended the said individual to engage in sexual
> activity.  Third, that if the sexual activity had occurred, the defendant could
> have been charged with a criminal offense under the law of Vietnam.  And
> fourth, that the defendant acted knowingly and willfully.
>
> It is not necessary for the government to prove that the individual
> actually engaged in sexual activity but it is necessary for the government to
> prove that the defendant intended to engage in some form of unlawful sexual
> activity.  So the government must prove that if the intended sexual activity had
> occurred, the defendant could have been charged with a criminal offense under
> the laws of Vietnam.  In that regard, *I instruct you as a matter of law that in
> 1999, if an adult had sexual intercourse with a child who had not reached the
> age of 16 years, it would have been a criminal offense under the laws of
> Vietnam. I instruct you further that in 1999, a female who had not reached the
> age of 18 years could not legally marry anyone in Vietnam.*

Tr. at 366-67 (emphasis added).

Morris contends that Agent Yen's testimony about Vietnamese law was false and that,

consequently, the district court's jury instruction was erroneous. As the Government

---

[11](...continued)
investigating money laundering, anti-dumping cases, identity fraud, and pedophile cases.  Tr. at 174.

recognizes in its response to Morris's § 2255 motion, "[t]he thrust of Morris's argument is that the prosecution ... misrepresent[ed] Vietnamese law as a way to invalidate his 'marriage' to TP so that he could be convicted of transporting a minor in foreign commerce for purposes of sex." Doc. No. 28 at 50.

In pursuing this argument, Morris asserts that "early marriages" are officially recognized in Vietnamese culture and that his marriage to TP was legal under Vietnamese law. *See* Doc. No. 2 at 35-42. As support for this assertion, he attaches to his motion a document he received from the Vietnamese Embassy entitled "Viet Marriage Statistics," which reflects marriage data for Vietnam for the years 1999-2005. *See* Doc. 3-3 at 1-5. Although this document states that "early marriages occur and have been a practice in Vietnam in the past," it further states that Vietnam's "Marriage and Family Law stipulates that *the minimum legal age of marriage is 18 years for females* and 20 years for males." *Id.* at 3 (emphasis added). Thus, this document actually refutes Morris's own argument regarding the legality of his marriage to 15-year-old TP. Still, Morris maintains that the Marriage and Family Law referred to in this document took effect in 2001, two years after his marriage to TP, and that the document's reference to the age limit of 18 does not apply in his case. Doc. No. 2 at 34. In response to this claim, the Government has submitted a document setting forth the Marriage and Family Law that took effect in Vietnam in December 1986. *See* Ex. XX at 1-8. Article 5 of the Marriage and Family Law enacted in 1986 indicates that "[m]en reaching the age of twenty and women at eighteen over shall be eligible to marry." *Id.* at 2.

26

Thus, from at least as early as 1986, through 2001, the legal age of marriage for females in Vietnam was 18 years.

Morris fails to demonstrate that Agent Yen's testimony regarding the legal age for female marriage in Vietnam was false or in any way inaccurate. As a result, he also fails to demonstrate any error in the district court's jury instruction regarding when females in Vietnam could legally marry in 1999. Consequently, his contention that he was convicted based on false claims about Vietnamese law is without merit. Because this underlying claim is without merit, his trial counsel was not ineffective for "failing to recognize" this claim. Counsel cannot be ineffective for failing to argue a meritless issue. *Chandler v. Moore*, 240 F.3d 907, 917 (11th Cir. 2001); *United States v. Winfield*, 960 F.2d 970, 974 (11th Cir. 1992). This claim does not entitle Morris to relief.

      b.    <u>Failure to Recognize Morris's Ineligibility for Prosecution under 18 U.S.C. § 922(g)(1)</u>

Morris contends that his trial counsel rendered ineffective assistance by failing to argue that his 1980 Colorado conviction for drug distribution could not be used as a predicate felony for purposes of 18 U.S.C. § 922(g)(1), which prohibits firearm possession by a convicted felon, i.e., anyone who has been convicted of a "crime punishable by imprisonment for a term exceeding one year." Doc. No. 1 at 13; Doc. No. 2 at 94.

Morris argues that his Colorado conviction is not a qualifying predicate felony for purposes of 18 U.S.C. § 922(g)(1) because it does not fall within the definition of a "crime punishable by imprisonment for a term exceeding one year." That definition, found at 18

U.S.C. § 921(a)(20), provides in pertinent part that "[a]ny conviction ... for which a person has been pardoned or has had civil rights restored shall not be considered a conviction for purposes of this chapter, unless such ... restoration of civil rights expressly provides that the person may not ship, transport, possess, or receive firearms." 18 U.S.C. § 921(a)(20). Morris contends that because the State of Colorado, by operation of law, automatically restored his civil rights once his sentence was completed in 1981, his drug conviction could not be used as a predicate felony for purposes of § 922(g)(1).

Morris's appellate counsel raised this substantive issue on direct appeal, and the Eleventh Circuit discussed the issue as follows:

> On appeal, Morris challenges his felon-in-possession conviction, arguing that, because his civil rights automatically were restored when he completed his sentence: he says his 1980 Colorado drug conviction was not a qualifying conviction for purposes of 18 U.S.C. § 922(g)(1). Morris did not object on this basis in the district court; so we review his present claim only for plain error. *United States v. Lewis*, 492 F.3d 1219, 1222 (11th Cir. 2007). To show plain error, Morris must establish (1) error; (2) that was plain; (3) that affected his substantial rights; and (4) seriously affected the fairness, integrity, or public reputation of the judicial proceeding. *Id.*

> A conviction does not count for section 922(g)(1) purposes if the defendant has had his civil rights restored, unless the restoration expressly restricts the defendant's firearm rights. 18 U.S.C. § 921(a)(20). Colorado, by operation of law, automatically restores a felon's civil rights once he has completed his sentence. *See* Colo. Const. art. VII, § 10. When Morris completed his sentence for the drug conviction in 1981, Colorado imposed no restrictions on his right to possess firearms. But in 1994, before the instant felon-in-possession charge, Colorado amended its laws and made it a crime for any convicted felon to possess a firearm. Colo.Rev.Stat. § 18-12-108(1).

> Neither this Court nor the Supreme Court has addressed whether section 921(a)(20) requires a court to apply the state law that was in effect when a

28

defendant had his rights purportedly restored or whether that section requires a court to apply the amended law which was in effect when the defendant was arrested. So, any error in the district court's failure to *sua sponte* dismiss the section 922(g)(1) charge was not "plain" under current law. *United States v. Lejarde-Rada*, 319 F.3d 1288, 1291 (11th Cir. 2003) (no plain error exists where there is no precedent from the Supreme Court or this Court directly resolving an issue).

      In addition, that neither Morris nor the government raised the issue of the applicability of the section 922(g)(1) exception is undisputed. And it was Morris's burden to do so: the government was not required to prove the inapplicability of the section 921(a)(20) exceptions. *United States v. Jackson*, 57 F.3d 1012, 1016 (11th Cir. 1995) (explaining that "the defendant, and not the government, bears the burden – at least the burden of going forward with evidence – concerning the expungement exception"). Thus, given Morris's burden of coming forward with evidence about the applicability of the exception and his failure to do so, he cannot show how any error affected his substantial rights.

*United States v. Morris*, 389 Fed. App'x 948, 950-51 (11th Cir. 2010).

From the appellate court's discussion of this issue, it is evident that no precedent existed on the issue at the time of Morris's trial. Thus, Morris cannot demonstrate that he would have prevailed if the issue had been directly presented to the district court. Because there was no precedent upon which Morris's trial counsel could have relied to argue successfully that Morris's 1980 Colorado conviction did not qualify as a predicate felony for purposes of § 922(g)(1), Morris cannot demonstrate that he was prejudiced by his trial counsel's failure to raise this issue. Morris is entitled to no relief based on this claim of ineffective assistance of counsel.[12]

---

      [12] As noted by the Eleventh Circuit, in enacting Colo. Rev. Stat. § 18-12-108(1) in 1994, the State of Colorado amended its laws and made it a crime for any convicted felon to possess a firearm.
(continued...)

> c.   Failure to Recognize That No Visa-fraud Offense
>       Occurred

Morris next contends that his trial counsel rendered ineffective assistance by failing

to recognize that no offense for visa fraud under 18 U.S.C. § 1546(a) took place.[13]  Doc. No.

1 at 13; Doc. No. 2 at 94.  Although Morris does not set forth a specific argument under this

heading in either his § 2255 motion or supporting memorandum, the court presumes that the

substance of this claim is set forth by Morris in Ground 6 of his § 2255 motion, where he

claims that he was wrongly indicted for making an "immaterial written error" on a visa

application that was "never presented or procured."  *See* Doc. No. 1 at 8-9; Doc. No. 2 at 42-

46.

Blake Diamond, an agent with U.S. Immigration and Customs Enforcement, testified

at trial that a U.S. citizen intending to marry a foreign national and wishing to have that

individual brought to the United States for the purpose of getting married is required to

complete and submit to immigration services an application for an alien fiancé(e) visa. Tr.

at 186-87.

Agent Diamond's testimony established that in June 1996, Morris filed an alien

---

[12](...continued)
As the Government notes, the Colorado Court of Appeals has ruled on the issue presented by Morris,
i.e., whether enactment of Colo. Rev. Stat. § 18-12-108(1) voided the restoration of civil rights, and
the ability to possess a firearm, which previously occurred through operation of law.  Doc. No. 28
at 52-53. The Colorado court held that § 18-12-108(1) applies to persons (like Morris) with
convictions prior to 1994. *People v. DeWitt*, 275 P.3d 728, 731-32 (Colo. App. 2011).

[13] Title 18 U.S.C. § 1546(a) prohibits fraud and misuse of visas, permits and other related
documents.

fiancée visa application for "TNTN," a Vietnamese female born in August 1979.  Tr. at 190-91.  Morris later withdrew that application.  Tr. at 201.

In November 1999, Morris filed an alien fiancée visa application for "CTTT," a 12-year-old Vietnamese girl.  Tr. at 192-94.  That application was denied because CTTT was too young to be legally married.  Tr. at 194.

In July 2001, Morris filed yet another alien fiancée visa application, his third, this time for "HTMP.," an 18-year-old Vietnamese female.  *Id*.  In the section of the application asking the applicant for the names of any prior husbands or wives, Morris who had previously been married and divorced, wrote "None."  Tr. at 195.  The application also contained a question asking whether the applicant "ha[d] ever filed for this or any other alien fiancée."  Tr. at 196.  Morris checked "No" and certified the application by signature and date.  *Id*.  In 2002, Morris wrote a letter to immigration services requesting that the application be cancelled.

It was the Government's position that Morris's answers on his third alien fiancée visa application, filed in July 2001, constituted material false statements, because he had previously been married and divorced and because he had filed two previous alien fiancée visa applications.  *See* Tr. at 197.  Morris maintains that he could not be convicted for visa fraud under 18 U.S.C. § 1546(a) because he withdrew the July 2001 application before a visa was actually issued.  *See* Doc. 2 at 43.  He argues that a visa application must be processed and a visa actually procured for a false statement on the application to constitute a violation of § 1546(a).  *Id*.  This argument is unavailing, as neither "processing" nor "procurement"

31

is an essential element of a § 1546(a) violation.

> Under 18 U.S.C. § 1546(a), a person commits visa fraud who
>
> knowingly makes under oath, or as permitted under penalty of perjury under section 1746 of title 28, United States Code, knowingly subscribes as true, any false statement with respect to a material fact in any application, affidavit, or other document required by the immigration laws or regulations prescribed thereunder, or knowingly presents any such application, affidavit, or other document which contains any such false statement or which fails to contain any reasonable basis in law or fact.

18 U.S.C. § 1546(a).   Count 5 of Morris's indictment substantially tracked the pertinent language in the statute.   *See* Ex. D at 5-6.   Thus, visa fraud, for purposes of Morris's case, "has five elements: the defendant (1) knowingly (2) presented (3) an application or 'document required by the immigration laws' (4) that contained a false statement (5) as to a material fact.  18 U.S.C. § 1546(a)."   *United States v. Archer*, 671 F.3d 149, 154 (2ⁿᵈ Cir. 2011).   A plain reading of § 1546(a) reflects that the presentation of a known false material statement on an application required by the immigration laws completes the crime.   *See United States v. Jamal*, 246 Fed.Appx. 351, 364 (6ᵗʰ Cir. 2007) ("Either the making of the false statement or the presentation of that statement constitutes passport or visa fraud."). Morris's argument notwithstanding, processing of the application and procurement of a visa are not elements of § 1546(a).

Morris also suggests that his false statements were not "material," as required by § 1546(a).   *See* Doc. No 2 at 42-46.   During direct examination, Agent Diamond testified as follows:

Q [Government's attorney]:  Okay.  So we have got three, basically three pieces of information.  There is more but we have got at least these three pieces of information on this form, whether or not there is a marriage, what happened to that marriage, and whether a previous form has been filed?

A [Agent Diamond]:  That's correct.

Q:  Right?  Why is it important to know those things?

A:  Well, first, the number 10, names of prior husbands and wives, if the person filing this application or – I'm sorry, this petition – had been previously married, it would need to be known what happened with the marriage, whether there was a divorce, a legal divorce.  If so, they would have to provide a copy of the divorce judgment.  Or if the spouse had died, they would have to  supply a death certificate.  And that would let the government know that this person is legally able to get married again.

Q: And item 13?

A: 13, like I said before, lets the government know if you had filed any previous applications.  Two things:  One, to see if those applications are still pending or have they already been adjudicated.  Two, to see if there is a pattern of potential visa fraud, if there had been numerous applications filed over and over and over.

Q:  You already indicated that you investigate, in your line of work, both marriage fraud and visa fraud.  What do those investigations and the law surrounding those investigations, what are they designed to prevent?

A:  They are designed to prevent people from coming here to the U.S. under bad intentions.  It can be, to investigate people for visa fraud would be to make sure they are not bringing people over here for monetary reasons, promising to get somebody here for a short period of time to get them legally adjusted and then to do the same thing over and over again, to get paid to get married.

Q:  So in other words, it's to prevent, or those investigations and those laws are to prevent people getting here under false pretenses?

A:  Exactly.

33

Q:  These particular items, I assume, along with the other ones, are reviewed when the determination is made to grant the petition or to deny it; is that correct?

A:  That's correct.

[Defense counsel]:  Objection; leading.

The Court:  Don't lead the witness.

Q:  Those items, what about those items – or not what about them, but are those items material in the decisions that are made to deny or grant the petitions?

A:  They are. They are specifically outlined in Section 214 of the Immigration and Nationality Act, and it specifically states that the information on the I-29 are mandatory to be answered and the information supplied to the government for the purpose of establishing [that] the person's legally able to get married, that they are intending on a bona fide marriage.  It's spelled out.

Tr. at 188-90.

In light of Agent Diamond's testimony, it is clear that Morris's false statements on the application meet the definition of materiality.

Each essential element of visa fraud is present in Morris's case. Morris cannot demonstrate that he was prejudiced by his trial counsel's failure to argue, on the grounds put forward by Morris, that no offense for visa fraud under § 1546(a) occurred, because any such argument would have been without merit.  As previously noted, counsel is not ineffective for failing to argue a meritless issue.  *Chandler*, 240 F.3d at 917; *Winfield*, 960 F.2d at 974. Morris is entitled to no relief on this claim.

        d.    <u>Failure to Recognize Morris's Incompetency to Stand Trial</u>

34

Morris contends that his trial counsel was ineffective for failing to recognize that he was medicated during trial to the point of incompetency.  Doc. No. 1 at 13; Doc. No. 2 at 94. He sets forth no specifics under this heading in his § 2255 motion and supporting memorandum.  However, in Ground 8 of his § 2255 motion, he asserts a substantive claim that the district court violated his due process rights by failing to act *sua sponte* to determine whether he was competent to stand trial and for failing to consider whether he was medicated to the point where the medication rendered him incompetent.  *See* Doc. No. 1 at 10; Doc. No. 2 at 53-70.

Morris goes into great detail in his supporting memorandum and attached documentation about his history of mental illness, hospitalizations, and medications – matters he says his trial counsel, the prosecution, and the district court were all aware of.[14]  *See* Doc. No. 2 at 53-70; Doc. No. 3.  However, these factors, standing alone, fail to establish that he was incompetent to stand trial.  "That a defendant suffers from some degree of mental illness or disorder does not necessarily mean that he is incompetent to assist in his own defense." *United States v. DeShazer*, 554 F.3d 1281, 1286 (10th Cir. 2009); *see also United States v. Vamos*, 797 F.2d 1146, 1150 (2nd Cir. 1986) ("It is well-established that some degree of mental illness cannot be equated with incompetence to stand trial.").

---

[14] For instance, in addition to pointing out that he is a veteran of the Vietnam War who has been diagnosed with post-traumatic stress disorder, Morris presents evidence that he has been prescribed psychotropic medicines and that he has been hospitalized on several occasions for mental-health reasons. One of the medicines prescribed to Morris is commonly used to treat bipolar disorder. *See* Doc. No. 3, Tabs 1-5.

The issue of the district court's duty to order a competency hearing in Morris's case was appealed to the Eleventh Circuit. In rejecting Morris's argument that the district court should have conducted a *sua sponte* competency hearing because he had been diagnosed with post-traumatic stress disorder, the appellate court held:

> A district court must conduct a competency hearing when there is a *bona fide* doubt about the defendant's competence. *United States v. Rahim*, 431 F.3d 753, 759 (11ᵗʰ Cir. 2005). No such *bona fide* doubt arose here. Throughout the district court proceedings, Morris consulted with his lawyers about his defense, testified in his own defense, and exhibited no irrational behavior. In addition, and as Morris concedes, no medical opinion was submitted to the court reflecting the extent of Morris's mental issues. Thus, nothing indicated that Morris did not have the "sufficient present ability to consult with his lawyer with a reasonable degree of rational understanding" or that he did not have a "rational as well as factual understanding of the proceedings against him." *See Dusky v. United States*, 362 U.S. 402, 80 S.Ct. 788, 789, 4 L.Ed.2d 824 (1960).

*United States v. Morris*, 389 Fed. App'x 948, 951 (11ᵗʰ Cir. 2010).

"Incompetency means 'suffering from a mental disease or defect rendering [a defendant] mentally incompetent to the extent that he is unable to understand the nature and consequences of the proceedings against him or to assist properly in his defense.'" *Battle v. United States*, 419 F.3d 1292, 1298 (11ᵗʰ Cir. 2005) (quoting 18 U.S.C. § 4241(a)). To show entitlement to an evidentiary hearing on a competency claim, a petitioner must present "clear and convincing evidence creating a real, substantial and legitimate doubt as to his competence to stand trial." *Johnston v. Singletary*, 162 F.3d 630, 637 (11ᵗʰ Cir. 1998) (quoting *Medina v. Singletary*, 59 F.3d 1095, 1106 (11ᵗʰ Cir. 1995)). "This standard of proof is high; and 'the facts must positively, unequivocally, and clearly generate the legitimate

doubt.'"  *Battle*, 419 F.3d at 1299 (quoting *Medina*, 59 F.3d at 1106).  In order actually to prevail on such a claim, the petitioner must prove by a preponderance of the evidence that he was in fact incompetent to stand trial.  *Johnston*, 162 F.3d at 637 n.7; *see also Battle*, 419 F.3d at 1298-99; *Medina*, 59 F.3d at 1106.

Addressing Morris's allegation of ineffective assistance, his trial counsel, Jon Carlton Taylor, has filed an affidavit with this court in which he indicates that, *after* he was convicted, Morris had significant trouble focusing on issues relevant to his sentencing and became obsessed with tangential matters not related to sentencing.  Doc. No. 17 at 1-2.  Significantly, however, Taylor states that this marked a change in Morris's behavior following the trial and that "this condition [had] not affect[ed] Morris's ability to assist in his trial."[15] *Id*. at 2. As the Eleventh Circuit noted when addressing the issue of Morris's competency at trial, "[t]hroughout the district court proceedings, Morris consulted with his lawyers about his defense, testified in his own defense, and exhibited no irrational behavior." *Morris*, 389 Fed. App'x at 951. The record is replete with evidence that Morris had "a rational and factual understanding of the proceedings against him." *See Dusky v. United*

---

[15] Taylor was allowed to withdraw as Morris's counsel prior to sentencing after Morris retained new counsel, attorney Susan G. James.  *See* Case No. 2:05cr108-LSC, Doc. Nos. 205 and 209. After obtaining a continuance of Morris's sentencing, James moved for a psychiatric examination of Morris.  *Id*., Doc. No. 217.  The court denied the motion, finding that Morris had failed to raise a bona fide doubt as to his competence to proceed to sentencing.  *Id*., Doc. Nos. 221 and 228.  James filed a second motion for psychiatric exam, which was likewise denied.  *Id*., Doc. No. 234. James was compelled to withdraw as Morris's counsel because of a conflict that developed between her Morris when Morris mailed her a copy of his book containing arguably illicit images. The court then reappointed Taylor to represent Morris at sentencing.  *Id*., Doc. Nos. 236-238.

*States*, 362 U.S. 402 (1969).  Morris's intellectual capacity to understand the proceedings is not disputed.  The record reflects that Morris discussed with his counsel and responded to questions from the district court regarding introduction of a videotape of his 1999 "marriage ceremony" with 15-year-old TP.  Tr. 248-49.  When Morris's counsel explained to the court that he had advised Morris against introduction of the video, Morris responded that the tape was "my best piece of evidence," demonstrating his awareness that acquittal on some of the sex-offense counts required him to prove that he was legally "married" to TP.  Tr. at 249. The record further reflects that Morris testified capably and intelligently as to events relevant to his defense and demonstrated impressive recall of his activities in Southeast Asia.  *See* Tr. at 274-337.

Morris's allegation that his counsel was ineffective for failing to recognize that he was medicated during trial to the point of incompetency and for failing to seek a determination as to his competency is not borne out by the record.  Morris has not proffered or presented facts that "positively, unequivocally, and clearly generate [a] legitimate doubt" as to his competence to stand trial.  *Battle*, 419 F.3d at 1299.  He fails to show that his trial counsel's failure to request a competency hearing in his case fell below an objective standard of reasonableness or that he was prejudiced by his counsel's actions in this regard.  *Strickland*, 466 U.S. at 687-89.  Nor is he entitled to an evidentiary hearing to explore this issue.  An evidentiary hearing is not a fishing expedition for facts as yet unsuspected, but is instead "an instrument to test the truth of facts already alleged in the habeas petition."  *Jones v. Polk*, 401

F.3d 257, 269 (4th Cir. 2005); *see also In re Shriner*, 735 F.2d 1236, 1241 (11th Cir. 1984).

Therefore, Morris is not entitled to any relief based on this claim.

> e.    Failure to Object to Admission of Evidence
>         Seized Pursuant to Search Warrants

Morris contends that his trial counsel was ineffective for failing to challenge the admission of evidence seized pursuant to warrants to search his property.  Doc. No. 1 at 13; Doc. No. 2 at 103.  Again, Morris sets forth no facts or argument under this heading in his § 2255 motion and supporting memorandum.  However, the court assumes that this claim relates to Ground 9 in the § 2255 motion, in which Morris asserts, without any apparent basis in fact, that the evidence used against him during trial was not listed on the search warrants and thus was improperly admitted.  *See* Doc. No. 1 at 10; Doc. No. 2 at 70-74.  In making this claim, Morris also appears to argue that because the warrants included authorization to search for child pornography, and child pornography charges ultimately were not brought against him, all items seized under the warrants were somehow inadmissible against him. *Id*.

A federal Magistrate Judge approved three search warrants for properties owned by Morris.  Each warrant listed the same items and, in pertinent part, authorized seizure of the following:

- envelopes, letters, and other correspondence identifying persons transmitting through interstate or foreign commerce, including by mail or by computer, any visual depictions of minors engaged in sexually explicit conduct, as defined in Title 18, United States Code, Section 2256;

- envelopes, letters, and other correspondence offering to transmit child pornography and/or information regarding engaging in illicit sexual conduct with minors through interstate or foreign commerce, including by mail or by computer;

- correspondence or other writings pertaining to the purchase, possession, or receipt of child pornography and/or the engaging in illicit sexual conduct with minors, including, but not limited to: saved electronic communications (e.g., e-mail, instant messages, etc.), paper printouts of same, notes of conversation pertaining to the purchase, possession or receipt of child pornography and/or engaging in illicit sexual conduct with minors;

- photographs and/or videotapes, whether taken or made in the United States or any foreign nation; and

- passports, papers, tickets, notes, schedules, receipts, and other items related to international domestic travel.

The warrants' description of items to be seized covers written materials regarding sex with minors accomplished through interstate or foreign commerce, photographs and videotapes taken or made in the United States or any foreign nation, and passports and any other items related to domestic and international travel. The written materials, photographs, travel documents, receipts, and immigration forms seized from Morris's property and used against him at trial fit within the directives of the warrants and the agents' search authority, even though child pornography charges ultimately were not brought against Morris.[16]

---

[16] The court notes that it is permissible under the Fourth Amendment to seize things other than those specifically enumerated in a search warrant if they are apparently related to the criminal endeavor under investigation or have a reasonable relation to the purpose of the search. *See United States v. Kane*, 450 F.2d 77, 85 (5th Cir. 1971) ("Evidence not described in a valid search warrant but having a nexus with the crime under investigation may be seized at the same time the described (continued...)

Morris's trial counsel was not ineffective for failing to challenge the admissibility of seized items on the grounds now urged by Morris, because those grounds are baseless.  *See Chandler*, 240 F.3d at 917; *Winfield*, 960 F.2d at 974.  Therefore, Morris is not entitled to relief based on this claim.

   f. <u>Counsel's Failure to Present Additional Issues on Appeal</u>

Morris contends that his appellate counsel rendered ineffective assistance by failing to present additional issues on appeal. Doc. No. 1 at 13; Doc. No. 2 at 103.  However, Morris fails to specify a particular issue that his appellate counsel should have raised, but did not. Consequently, he can establish neither deficient performance by counsel nor prejudice resulting from counsel's performance.  On appeal, Morris filed a *pro se* brief raising claims in addition to the claim raised by his appellate counsel.  Although noting that Morris was not entitled to "hybrid representation," the  Eleventh Circuit addressed all issues in both the *pro se* and counseled briefs.  *See Morris*, 389 Fed. App'x at 951.  Because Morris has failed to establish that he was prejudiced by his appellate counsel's alleged failures, he has not demonstrated constitutionally ineffective assistance of counsel, and he is not entitled to relief on this claim.

---

[16](...continued)
evidence is seized."); *United States v. McCoy*, 515 F.2d 962, 964 (5th Cir. 1962) ("Although the weapons seized were not described in the search warrant, such evidence having a nexus with the crime under investigation may be seized at the same time as the described evidence.").  *See also, e.g., United States v. Schwarz*, 535 F.2d 160, 163 (2nd Cir. 1976); *United States v. Teller*, 412 F.2d 374, 379 (7th Cir. 1969).

### III.   CONCLUSION

Accordingly, it is the RECOMMENDATION of the Magistrate Judge that the 28 U.S.C. § 2255 motion filed by Morris be DENIED with prejudice.

It is further

ORDERED that the parties shall file any objections to this Recommendation **on or before July 14, 2014.**  A party must specifically identify the findings in the Recommendation to which objection is made; frivolous, conclusive, or general objections will not be considered.  Failure to file written objections to the Magistrate Judge's proposed findings and recommendations shall bar a party from a de novo determination by the District Court of issues covered in the Recommendation and shall bar the party from attacking on appeal factual findings accepted or adopted by the District Court except upon grounds of plain error or manifest injustice.  *Nettles v. Wainwright*, 677 F.2d 404 (5th Cir. 1982).  *See Stein v. Reynolds Securities, Inc.*, 667 F.2d 33 (11th Cir. 1982).  *See also Bonner v. City of Prichard*, 661 F.2d 1206 (11th Cir. 1981) (en banc).

DONE, this 30th day of June, 2014.

/s/ Susan Russ Walker
SUSAN RUSS WALKER
CHIEF UNITED STATES MAGISTRATE JUDGE